Argued and submitted May 5, affirmed September 3, 1986

In the Matter of the Compensation of
Margaret Gallegos, A Beneficiary of
Samuel Gallegos, Claimant (deceased).

**GALLEGOS,**
*Petitioner,*

*v.*

**AMALGAMATED SUGAR COMPANY,**
*Respondent.*

(WCB 83-02336; CA A36983)

724 P2d 850

Tim J. Helfrich, Ontario, argued the cause for petitioner.

With him on the brief was Yturri, Rose, Burnham, Ebert & Bentz, Ontario.

Stephen B. Fonda, Nyssa, argued the cause for respondent. With him on the brief was Stunz, Fonda, Pratt, Nichols & Kiyuna, Nyssa.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board that affirmed and adopted the referee's order denying her claim for dependent's benefits. *See* ORS 656.005(11);[1] ORS 656.204(5).[2] We review *de novo,* ORS 656.298, and affirm.

The referee found:

"Margaret Gallegos is the claimant in this case. Her son, the injured worker, Samuel Gallegos, Jr., is deceased. Claimant and Samuel Gallegos, Sr. had been married for some 36 years and had five children. The parents separated in the middle of 1979 but apparently remained friendly. Eventually all the children grew up and moved out of the mother's home except Samuel, Jr. who lived with her. To the knowledge of the witnesses he never married or had any children or any other dependents. His mother claims she is a surviving dependent.

"Claimant and decedent lived at 1004 Park Ave., Nyssa, Oregon since 1975. Claimant was purchasing the home at $146 per month. The claimant since 1972 has worked at headstart migrant day care institution with facilities at Nyssa and Ontario. She started as a cleanup woman. One and one-half years later she became a medical aide until 1979 and she then started as a health consultant.

"Samuel, Jr. was 30 years old at the time of his death while at work at the Amalgamated Sugar Co. He was not steadily employed and had other jobs. His primary job with Amalgamated was during 'campaigns' which apparently last from October to January, during the sugar beet run. He was killed there during November, 1982, loading sugar beets. Samuel, Jr. also worked for his mother's employer. The employees there

---

[1] ORS 656.005(11) provides in part:

" 'Dependent' means any of the following-named relatives of a worker whose death results from any injury and who leaves surviving no widow, widower or child under the age of 18 years: Father, mother, * * * who at the time of the accident, are dependent in whole or in part for their support upon the earnings of the worker."

[2] ORS 656.204(5) provides, in part:

"If the worker leaves neither widow, widower nor child for whom compensation may be paid, but leaves a dependent, a monthly payment shall be made to each dependent equal to 50 percent of the average monthly support actually received by such dependent from the worker during the 12 months next preceding the occurrence of the accidental injury, but the total payments to all dependents in any case shall not exceed $150 per month."

knew him and testified concerning his relationship to his mother. He also received a National Guard monthly salary and annual active duty pay.

"The testimony at the hearing was vague concerning specific amounts. Claimant was even given a recess in which to attempt to provide figures concerning the amount of support she thought she received from her deceased son. Defendant's position is that claimant was not dependent on her son but they did commingle their monies.

"The undersigned has gleaned from the sum total of all the testimony that decedent had told his mother's co-workers that his mother was not getting help from her other children and he intended to look after her permanently, but that he was getting on in years and he wanted to get married, but he would have to find a wife who would understand that he intended to support his mother. It was uncontradicted that decedent was intending to get married and it was his understanding that his fiancee acquiesced that they would have to live in the mother's home at least until claimant was (in his opinion) financially on her feet, which apparently she had not been (in his opinion) since before her husband left in 1969. It was not explained how claimant would accomplish this.

"The gist of all the witnesses' testimony was that decedent was generous with his mother and that sometimes he would turn over his entire pay to her. Sometimes he would keep out $30 or $40. Sometimes she would lend him money back when he had underestimated his needs for the month, but it was understood he would always reimburse her on his payday.

"It was also believably testified to that decedent had given little thought to the possibility that his mother, who he considered sickly, would outlive him, and in fact left his life insurance proceeds to his younger brother who lived close by in Idaho.

"The deceased's only large expense seems to be a used car he was buying. Apparently claimant needed collateral for a loan, so made the last two payments on the car in order for her son to obtain a free and clear title which she then used as collateral towards her loan. Claimant has her own car which the deceased maintained for her, but he did not make major repairs.

"According to the witnesses, the deceased often bought groceries and although his mother often cooked dinner he not only cooked on occasion but also regularly washed the dishes and cleaned up the house."

■ Claimant first contends that the referee and the Board erred in concluding that

> "[i]n order to comply with the statute the decedent has to have contributed more than 50 percent of claimant's average monthly income."

She argues that there is no authority for that requirement. She relies on ORS 656.005(11), ORS 656.204(5), and *Paul et al v. Industrial Acc. Com.*, 127 Or 599, 272 P 267, 273 P 337 (1928). We agree with claimant.

ORS 656.005(11) defines "dependent" as one "who at the time of the accident, [is] dependent in whole or in part for their support on the earnings of the worker." ORS 656.204(5) provides that "a monthly payment shall be made to [a] dependent equal to 50 percent of the average monthly support actually received by such dependent from the worker." Thus, it would be sufficient for claimant to show that she was dependent in part for her support on the earnings of the decedent. Her benefit would then be 50 percent of the average monthly support she had actually received from him. The Board erred in adopting the referee's conclusion. However, that does not end our inquiry.

■ Claimant next contends that the referee and the Board erred in adopting employer's calculations of the decedent's income and expenses. She argues that employer consistently miscalculated decedent's income and expenses. The referee stated:

> "The undersigned accepts [employer's] brief with its citations and calculations, and finds against claimant's position."

Employer provided most of the evidence on the issue of the decedent's expenses. Claimant's evidence did not show the decedent's maintenance costs. Her evidence of his contributions was uncertain at best. The referee stated:

> "One consideration in this case is the credibility of the claimant. Although she appeared to believe in what she was testifying to, it is not very convincing that she knew enough to testify. She assembled easily assailable figures, and in the undersigned's opinion, does not have the data necessary. The undersigned feels there is a great deal of hopeful guesswork on her part. It is just as convincing that many of the things that decedent gave were gifts, not support.

"Even if dependency had been established, the manipulation of the arithmetic does not allow an even remote calculation of benefits that might arise." *See* ORS 656.204(5).

We conclude that claimant failed to sustain her burden to show that the decedent contributed any more than his own maintenance cost. *See Paul et al v. Industrial Acc. Com., supra,* 127 Or at 608-609.

■ Claimant finally contends that the Board erred in concluding that she was not partially dependent on the decedent's earnings. She argues that, during the twelve months immediately preceding the decedent's death, her living expenses totalled $15,902 and that her net income during that same period was insufficient by more than $3,600 to pay that amount. She argues further that the decedent had contributed more than $300 monthly toward her support. The referee concluded in part:

"Although the evidence does establish that the decedent made some contribution, the record fails to establish, as the statute requires, that claimant was in fact dependent on the contributions in whole or in part. ORS 656.005(11)."

We find no reason to disturb that conclusion.

Affirmed.